Right. We will call the next case, Rogers v. Torres, number 242046. Good morning. May it please the court. My name is Blair Dunn, and I'm here on behalf of the appellant, Wes Rogers. I think that this is a fairly straightforward case and argument, and we can get there examining the case law, provided, of course, we don't take any questions regarding my views on the abrogation of the rule against perpetuities in Pennsylvania, which I am not prepared to address today. That's okay. Sorry, guys. You're not taking a position either? I think that's safe. Okay. Nor am I. I just happen to see it. So I would begin by addressing the court and addressing the chronology of the case law that the district court relied on to arrive at its conclusion. And I'd first point to, of course, the main case that the district court relies on, which is the Imbler case, which is a 1976 case from the U.S. Supreme Court. We move from there to, of course, Buckley in 1993. And then there's a series of cases specifically from this circuit and from the Supreme Court after that to deal with these types of motionless prosecutions or vindictive prosecutions. And I guess my major point is that what the district court didn't do was do the functional test from Buckley. And I think that was a big part of this. It also didn't rely at all on a part of the Mink decision from this court that deals with the policy reasons for prosecutorial immunity, which is, of course, something associated to the criminal process. And we highlighted that in our reply brief. That policy implication for prosecutorial immunity, I don't think was successfully or appropriately weighed by the district court in evaluating whether or not the then district attorney, Raul Torres, was operating in a function associated to the criminal process. And I think instead, even though he says he's looking at what the nature of the action was that the district attorney took, he really more relied on that it was the district attorney, not that this was a criminal prosecution. And I think that's where this case largely went awry. Counsel, are you aware of any case, only in civil cases, or excluded from the possibility of prosecutorial immunity? I'm not quite sure I heard the court's question. Am I aware of any civil cases where there was prosecutorial? Where there was immunity denied? No, I'm not, Your Honor. I think that's probably part of the issue here is I think the district court stretched this into something that we haven't seen before. Just quickly, you would agree that this court has extended prosecutorial immunity in civil cases? It has. Okay. It has. But of course, there's also the cases, the Beadle case, the Sherrill case, and some of these others where you get into the point where, and clearly from Hartman versus Moore, where you have a clear indication that, and this is where I think the district court in their footnote kind of put the cart before the horse, where you can have a case that is brought purely for retaliatory motive, as we are alleging was done in this case, and the district court skipped ahead and said, well, I just don't see it, and basically weighed the evidence as we point out. I think that was incorrect, and it's that action by the district court, I think, is what allows him to fill in with Imbler behind that and really get to this idea that, well, he's just doing this as a prosecutor to protect the health and safety of the community. Well, I don't know any government lawsuits that aren't supposed to be tied to protecting the health, safety, and welfare of the community. That's part of the actions of any government. It's supposed to be for those purposes. So I don't know that you can use that to override that test from Buckley. So what was the evidence that this was a retaliatory prosecution? So the only reason, and this is in the complaint, the only reason that we allege that Mr. Rogers was included in the civil lawsuit was because the district attorney assumed that he was a member of the New Mexico Civil Guard, the militia group that he was trying to enjoin, and because, and it actually linked to this in their complaint, because Mr. Rogers went on to a podcast of one of the Civil Guard's members or officers and discussed the district attorney's actions and discussed the issues, right? So he engaged in political speech on a podcast, and that was the reason that he was included in the lawsuit. That's the only reasons that are there, because he wasn't actually a member of the Civil Guard, as we pointed out in that district court proceeding, and that's putting aside all the arguments, because that case isn't in front of this court at all. That was just in state court about the right to assemble, and Mr. Rogers said he had associated with them, so it's a First Amendment association, right, kind of wrapped up in that mess. So he says he associated with them on the podcast, and he supported them, and it was that speech. That's all that was in the complaint that was brought in district court going after him, and so that's why we say that's all the motive that the district attorney put on. On the record was that, so. Okay, so did you have, in this case, did you allege that there were other reasons why the district attorney included you? We alleged he was also politically motivated. Again, to chill a person of ordinary firmness, the district attorney, Raul Torres, the district attorney at that time was, of course, now the attorney general from New Mexico, and was in the process of moving into that position, or running for that position, rather. Okay. In the state court lawsuit, how many people were included in the suit? I think it was eight, but there were some that came and went. Some fought it, some didn't, and went along with it. But there was nobody that I recall, and I only took over Mr. Rogers' defense in that case. I didn't take over the rest of the members of that, or the defendants in that lawsuit, or the organization itself. No, fair enough. I'm just curious, and here's why I'm asking. Does it help you or hurt you if the then district attorney included many people he believed were affiliated with the Civil Guard in the lawsuit? I think it helps, particularly in this case, because of all those people that were included in that other lawsuit, they all actually had some sort of formal affiliation to the Civil Guard. Mr. Rogers is the only one that did not, that professed he was not a member. And so, again, a prosecutor, if he'd taken this as a criminal prosecution, there'd have been no evidence to support including bringing a criminal prosecution against Mr. Rogers either, other than he is, for instance, if he's affiliated with a group. And that's a really shaky reason to initiate a criminal prosecution, which is why I think the district attorney didn't go that route in this deal, instead went this route of enjoining. I want to address as well, in that regard, the damage and the chilling a person of ordinary firmness. Mr. Rogers ultimately had to pay me to defend him, to try to keep his associational rights and his speech rights at issue, and it did chill his speech. I think that that's an area from Shero that I sometimes grapple with, and I think that it's fair that this court would as well. Shero and those cases where it's the idea that there has to be some sort of punitive aspect to it, some sort of damages beyond just having to participate in a lawsuit for declaratory judgment, that's what Shero discusses. I think that in this situation... Well, wasn't the lawsuit, the underlying lawsuit, to simply enjoin them from operating as a private militia, when they were not established, or endorsed, or had any official government backing? And Judge Kelly, that's... And they appeared at various events with weapons and that type of thing. And Judge Kelly, that's... Injuncting directly to Mr. Rogers. Except that the injunction was to enjoin him. I guess that was part of my problem in the underlying lawsuit, and I think that gets directly to that point from Shero. Yes, it was a declaratory judgment action seeking an injunction against that organization assembling for that purpose, but it was also enjoining those... Right. And I thought it was to enjoin them from operating as a private militia without authority. That's right. It was to enjoin them from assembling as a group for that purpose. But if that's all you were doing, I don't know why... It's a private militia, not just a group. That's correct. I'm just saying that that's the purpose, right? They were assembling as a group for that purpose. And I think that's the distinction here. Mr. Rogers was not part of that group. And so including him in that when the evidence... There really was no evidence that he was a member of the group. He'd never signed a roster or a role or anything like that. They could have... Instead of just, you know, we're just going to join all of these individuals against assembling as a militia for the purposes that they were. Instead, they went out and they grabbed him because he had gone on a podcast and supported. So it was purely a retaliatory case, and it was purely to punish him for the speech he had made, the political speech he had made. Does that answer your question? Just to conclude, what's the evidence of that? The evidence was what I alluded to to begin with, is that the only thing that's mentioned in the complaint is that he is a member when he wasn't and that he... So he had assembled. He was part of the group, which is still protected, and maybe the purpose was not. But he was assembling with the group. He'd gone to a meeting. And then they linked in a footnote the podcast that he went on that said those are the reasons that he's included in this lawsuit. So that's the only reasons they gave. So I'm saying that's the only reasons they have, which is a politically motivated retaliation. And so that's where we arrived at that. So if there are no further questions, immediately, I'll reserve the remainder of my time. You may. Good morning, Your Honors. Michelle Blake for Appley, then District Attorney Raul Torres. I think the key to this case is that absolute immunity bars a suit if the official's actions were within the scope of the judicial process. And that's the key. That's where we start. And we heard counsel just acknowledge to a question that, indeed, there is no case law in this circuit that prohibits the extension of absolute immunity to a civil lawsuit. So what the court is tasked with is determining whether the district court was right or wrong when it determined that the scope of absolute immunity consumed the actions of District Attorney Torres in this matter. And we would posit to the court that the court was correct and that the underlying decision should be affirmed. When we're looking at absolute immunity, you look at the function. What is the function of absolute immunity? It is to protect those officials that are acting in their judicial capacity, proceeding with, and advancing the cause and advocacy for the government. Is their action intimately tied with the judicial proceeding? In this case, yes. As the court has pointed out, Mr. Torres took action after this private militia group was involved in a protest in downtown Albuquerque. Raul Torres filed a declaratory and injunctive relief action trying to enjoin this particular group from meeting in public and presenting themselves as an entity with authority to keep the peace through their gear, through their combat fatigues, through their weaponry, through their positions. They wanted to enjoin them from presenting themselves as a peacekeeping militia or with authority to do so. Mr. Rogers was included in the declaratory judgment action. And to your question, Your Honor, there were 14, originally 14 individual defendants. Mr. Rogers was included not because of his speech, but because he self-identified as an associate of this group. That's why he was included. To enjoin the group itself, the New Mexico Civil Guard has to include the members of, associates of, affiliates of that group or else one could just simply turn around. If the injunction was just against the Civil Guard, a member could turn around and say, well, that injunction didn't apply to me. I'm going to go ahead and my three buddies here, we're going to, again, act as a private militia. Mr. Rogers was included based on his self-affirmation of association with the group and for no other purpose. So... I mean, what, assume something. Assume that you, that your client was wrong, that he was associated with or affiliated with or a member of the Civil Guard. Does that make any difference? No. And here's why. I think the court addressed that point somewhat in Imbler and then in the Sheo, and forgive me if I'm mispronouncing the name, Sheo versus the City of Grover. In Imbler, the court correctly pointed out that at times there is no redress for someone being wronged, but the court would prefer that certain wrongs go unredressed in favor of the opposite being true, where individuals just trying to do their duties are forever hounded or under the threat of retaliation. And in the Sheo case, the court also said that in situations such as this, where there's a deck action, which this was, a deck action is not sufficient to chill someone of ordinary fortitude from prevent, or prevent that person from exercising his or her constitutional rights to free speech. So going back to the scope of immunity, did Raul Torres, as the district attorney, have authority to act on behalf of the state? We know he did because there's a statute on point, which was addressed in the briefing, which allows the district attorney to bring or defend lawsuits, civil or criminal, in which the state has an interest. The state clearly had an interest here because of two constitutional provisions and one statute. The constitutional provisions afford the governor exclusive authority to call or raise a militia. Let me stop you for a minute just on the chilling point. This was more than a deck action. This was a, the district attorney sought declaratory and injunctive relief. So he was more than just seeking a declaration that, I'm terrible with names. Mr. Rogers was part of this group. He was seeking affirmative relief to prohibit him from engaging in any further conduct. Prohibit, you're correct, your honor. Prohibiting him and the other members of the group and the group from this, meeting in public, acting as a private militia. He wasn't seeking to enjoin him from going on a podcast and criticizing anyone. He wasn't seeking to enjoin his first amendment rights to complain about the district attorney. He was just seeking to enjoin the group and the militia from meeting in public and usurping the powers of the government. Okay. All right. So if we look at the function test again, we know that Raul Torres had authority to file the action and the statutory provisions and constitutional provisions that he was seeking to enforce. So what I think that Mr. Rogers has failed to do here is establish to the court any reason why absolute immunity wouldn't apply. We know from the case law that absolute prosecutorial immunity only does not apply in cases perhaps where there are administrative functions at issue or investigative functions at issue. Mr. Rogers didn't complain that either of those two caveats exist here. Well, counsel, can I just stop you there? So I guess it's your contention that a prosecutor who is given the authority to file criminal charges or bring civil lawsuits could bring any civil lawsuit and that would receive absolute immunity. Or are you making a narrower contention that the civil lawsuit has to look or is somehow analogous to a criminal prosecution? I'm trying to get at, does there have to be a prosecutorial element to it to get immunity, prosecutorial immunity? Not according to the New Mexico statute 36-1-18. The statute says the district attorney has his or her part of their duties to bring or defend any lawsuit, civil or criminal, in which the state has an interest. It doesn't specifically say there has to be a prosecutorial verging on criminal element. And I think that that allowed, in this case, DA Torres to bring this in his role as a judicial officer on behalf of the state to protect the state welfare and or safety of the public. I think that element likely has to exist because that is part of his charge, is to further the public safety and public welfare. Well, okay. So as long as you have that, you get prosecutorial immunity? Yes, Your Honor, according to the case law. Well, according to the statute is what you're saying. What is according to the case? I mean, I guess I'm just getting at, we call it prosecutorial immunity, but your statute apparently, as you're reading it, is much broader than that, right? There has to be a public interest. But basically, anything the DA does is going to get prosecutorial immunity. Is that your understanding? That is how I read the statute, Your Honor. I think New Mexico statute is pretty broad. Civil or criminal, as long as the state interest is at heart of the issue. Okay. Whether or not you get prosecutorial immunity, is that purely a question of state law? No, Your Honor. I think that the prosecutorial immunity, one, you have to have the state interest at heart, which I think is appropriate and seen in this instance. But you also have to be acting on behalf of the state within your judicial, your actions have to be intimately associated with the judicial process. So it can't be a personal whim. It has to be on behalf of the state connected with the judicial process. Okay. That's fine. Thank you. Thank you, Your Honor. Let me ask you something. So I want you to assume that the following evidence was in the record, and that is that the district attorney at the time said, I heard this guy Rogers on a podcast and he was criticizing me and I'm trying to run for further office and I'd love to get that guy. And these civil groups are causing danger to the community. And we got to stop that. Lest the citizens be hurt by them and their antics. So I'm going to file a deck action and I'm going to name Rogers and all the other members of this group. What is that? Where are you under that fact pattern? I think in the latter part of the fact pattern, that absolute immunity would apply because the district attorney is operating on behalf of the public. Don't split up my facts. Take all the facts together. When there is a, I am concerned about the width of personal animus and personal retribution. However, I think we must rely on the Supreme Court case, again, an imbler that says we have to, unfortunately, allow some of those wrongs to go unredressed in order to prevent the larger harm of having prosecutors be under the constant threat of retaliation. Right. Okay. And I would bring the court's attention also to the fact that although plaintiffs cited a maraud of cases, First Amendment cases in the briefing, and this is to Judge Kelly's point, while there is no New Mexico case that disallows immunity in a civil case, many of those cases cited by plaintiffs counsel in the briefing specifically said, we are not going to address the issues of the prosecutor. The prosecutor's been dismissed. The prosecutor has absolute immunity. Those issues were addressed in Benavides. They were addressed in Becker. They were addressed in the Morris case. The issue was out of hand, not dealt with because the court recognized absolute immunity existed. And I think in this case, although there's been some argument that Mr. Rogers criticized the DA in the podcast, there was no evidence in the record, the summary judgment record, that there was actual criticism of the DA or of his political aspirations. Was the podcast itself either a link or the contents, a transcript or the contents of it included in the summary judgment record? The citation was, yes, Your Honor. Okay, and as a matter of procedural law, would that be a sufficient inclusion of it in the summary judgment record if somebody could click on it and go listen to it? I would say yes, Your Honor. I think that's the purpose of providing the link to the podcast. Okay, so I mean, I'll just tell you I haven't listened to the podcast, but if I listen to it, are you telling me, have you listened to it? I have. Okay, are you telling me that if we listen to it, that we're not going to have any criticism of the DA on there? Unfortunately, I listened to it over a year ago and I can't specifically recall. However, my recollection is I don't recall any specific criticisms of the District Attorney and or Mr. Torres's campaign towards the Attorney General. Although, Your Honor, I have to acknowledge that I don't specifically recall. Okay, fair enough. I think, Your Honor, that I would simply ask that the court just look at the case law, look at the briefing and uphold the underlying decision by the District Court as Chief or Judge Gonzalez was correct in his ruling that summary judgment was appropriate in this case based on absolute immunity. Thank you, Your Honor. I think this gets to the point that I began with, which is that Inboarder says what it says, and I'm not disputing that it says what it says, but we have cases since then. Specifically, Mink in 2007, relying on Buckley from 1993, says prosecutors are absolutely immune for those activities intimately associated with the judicial phase of the criminal process. Of the criminal process, part of Mink was ignored by the District Court and it was just ignored again by counsel when they cited to absolute immunity and what it is and the associated, intimately associated with the judicial phase. That's true, but you can't leave off the rest of what this court said in Mink, which is the criminal phase process because that is what drives the policy of prosecutorial immunity. And that's what's important, ultimately, is what is the policy behind the immunity? And here, our allegations standing as true in the complaint are that this was a retaliatory motive and that there is a strong policy in favor of allowing people to continue to speak and enjoining them from associating and from getting affirmative injunctive relief, as Judge Carson pointed out, is more than just a declaratory action. If Mr. Torres had just purely included Mr. Rogers in that case for a purely declaratory judgment to say, hey, you guys can't do this, I'd probably not hear, there's probably not a claim that we would have been able to bring, but it was the seeking the affirmative relief that actually does chill a person and I think fits within Sherrill and that's what I was trying to get to earlier. So, if there's other questions, I know I haven't used all my time, but I was taught if you don't got anything else to say, be quiet. Judge Kelly, do you have anything? Nothing further. Okay, thank you. Thank you. All right, the case has been submitted. Thank you for your arguments.